UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA　　　　)
　　　　　　　　　　　　　　　　　)
V.　　　　　　　　　　　　　　　　)　　　　No. 2:10-CR-82
　　　　　　　　　　　　　　　　　)
DAVIDSON COACHY, *ET AL.*　　　　)


## <u>REPORT AND RECOMMENDATION</u>

Defendant Coachy is indicted with three co-defendants for conspiring to distribute and to possess with the intent to distribute Oxycodone. He also is charged with possessing Oxycodone with the intent to distribute it, and with being a convicted felon in possession of a firearm and ammunition.

Defendant has filed two motions to suppress any evidence seized from Room 214 in the Holiday Inn in Johnson City, Tennessee, and any statements he made to Special Agent Vince Walters of the DEA. (Docs. 54 and 63). These motions have been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on January 19, 2011. Agent Vince Walters was the only witness.

On July 9, 2010, various law enforcement officers of the Johnson City Police Department, including Special Agent Vince Walters who was assigned to the Drug Enforcement Administration, were conducting an investigation of the drug trafficking activities of Mr. Coachy. The Vice Unit of the Johnson City Police Department had obtained

a state warrant to search Mr. Coachy's apartment at 103 South Beech Street in Johnson City.

Agent Walters received a radio or phone call from Agent Scott Reed, in which Reed said he had just observed Coachy turning his vehicle into the parking lot of the Holiday Inn. Reed followed Coachy into the parking lot. Walters himself immediately drove to the Holiday Inn.

Coachy exited his vehicle and entered the hotel, still followed by Reed. Coachy got on the elevator, as did Reed. When they arrived on the second floor, Coachy turned to the left, and Reed, in an effort to conceal his interest in Coachy, turned to the right, although he attempted to look over his shoulder in an effort to determine what room Coachy entered. However, when he looked over his shoulder, Coachy had already disappeared.

In the meantime, Walters had received a phone call from Officer Stine of the Johnson City Police Department, advising that there was now a warrant for Mr. Coachy's arrest.

Walters, accompanied by Special Investigator Alexander, entered the hotel, and there met with Agent Reed who by that time had returned to the lobby. All three officers sat in the lobby, attempting to be as unobtrusive as possible, waiting for Mr. Coachy to return.

In a short time, Mr. Coachy emerged from the elevator and began walking toward the rear door of the hotel. The three officers got up to follow, and Agent Alexander called out defendant's name. Receiving no response, Agent Reed, in a louder voice, said "D,"[1] prompting defendant to turn around. The officers told Mr. Coachy that they had a warrant

---

[1]Or, Dee? In any event, whether D, or Dee, it was Mr. Coachy's nickname.

for his arrest, and they handcuffed him.

Agent Walters "mirandized" Mr. Coachy and, so Agent Walters testified, he stated that he understood his rights. Agent Walters asked him to cooperate, and Mr. Coachy responded that he wished to do so. In short, according to Agent Walters, everyone, including Mr. Coachy, were pleasant and cordial.

Agent Walters asked Coachy for permission to search his motel room, and Mr. Coachy consented. At that point, Agent Walters asked him what room he was staying in, and Mr. Coachy responded that he was staying in Room 214. Then, in response to Agent Walters' question, Coachy said that his "key" – actually a magnetized card – was in his wallet. At Mr. Coachy's direction, Agent Walters retrieved his wallet and removed the key.

Agent Walters performed a pat-down search of Coachy and detected a large bulge in one of his pant pockets. That bulge was a rolled-up wad of lower-denomination bills which, by using his hands, Walters described as being approximately the size of an apple or orange. In response to Walters' questioning, Mr. Coachy admitted that the money was derived from the sale of Oxycodone pills.

More or less at this time, Officer Troster, Walters' supervisor, arrived. Troster, Walters, and Alexander went to Room 214 to search it. Walters took defendant with them so that defendant could revoke his consent to search, if he so decided.

Defendant told the officers that they would not find anything in the room when they searched. That representation turned out to be false. The officers found several thousands of dollars in currency concealed within the pages of the motel's phone book. They also

found approximately 1300 Oxycodone pills concealed beneath the sink in the bathroom.

As the search progressed, defendant and Agent Walters were sitting across from one another, only a few feet apart. Agent Walters asked defendant to make a statement, and defendant complied. He said that he had been getting Oxycodone pills from Miami, Florida, and had been distributing those pills in the Johnson City area since November 2009. In fact, he gave a rather lengthy statement that detailed the number of pills obtained and distributed for each month from November 2009 through July 2010, as well as the price for which he sold each pill, depending upon its size.

After the search was concluded, Troster and Alexander left the room to take the contraband back to the police station; Walters, Reed, defendant, and a uniformed officer were still in the room. Someone knocked on the door; Agent Walters assumed it was another police officer. The uniformed officer looked through the peep hole and saw, not another police officer, but an unknown white male. Not knowing with what they might be confronted, Agent Walters instructed Mr. Coachy to lie on the floor behind the bed for his protection. The other officers concealed themselves as Reed answered the door. The person at the door was Joshua White, who chose a particularly bad time to conduct a drug transaction with Mr. Coachy. He was promptly arrested and given his *Miranda* warnings. He invoked his privilege to remain silent, and he was not questioned.

Defendant ultimately was transported to the Washington County Jail.

Later that day, Agent Walters went back to the jail, and presented a written Waiver of Miranda Rights to defendant, which defendant signed. Agent Walters testified that he did

this only to memorialize that he had earlier verbally provided defendant with his *Miranda* warnings before any questioning took place.

Agent Walters testified that defendant's waiver of his right to remain silent when questioned at the hotel earlier that day, and his consent to search his motel room, were voluntary, knowledgeable, and free of any coercion or duress. That testimony is believed.

As the only witness, Agent Walters' testimony is uncontradicted. Unfortunately, there are two matters which provided some fodder to Mr. Coachy as he attempted to impeach Agent Walters. First, Agent Walters testified that he mirandized defendant at the hotel, and requested permission to search the hotel room, at approximately 1:00 p.m. on July 9. However, Agent Walters prepared two official reports, one far more detailed and lengthy than the other. The more detailed one, Exhibit 4, recites that defendant was arrested in the hotel lobby at approximately 1:00 p.m. and given his *Miranda* warning at that time, which of course is consistent with his testimony before this court. The shorter version, Exhibit 5, recites that Agent Walters provided the *Miranda* warning to Mr. Coachy at 2:00 p.m. Whether one of the times was the result of a typographical error, or the result of a mental error when preparing either document, it is inconsequential. Agent Walters is an extremely credible witness, and this *de minimis* inconsistency regarding the time he administered the *Miranda* warning to Mr. Coachy does nothing to compromise his testimony.

The other matter upon which Mr. Coachy seizes to impeach Agent Walters is the criminal complaint submitted to this magistrate judge by Agent Walters which stated that Mr. Coachy was arrested at 103 South Beach [sic: Beech] Street, not the Holiday Inn.

This is not an error that can be easily glossed over. Agent Walters *swore* to the accuracy of the information in the criminal complaint, but that information was inaccurate. On the basis of that criminal complaint, Mr. Coachy was arrested. As it turned out, the mistake was not critical. All the other relevant facts recited in the complaint, brief as they were, were correct. Further, Mr. Coachy undeniably was arrested at the Holiday Inn in the presence of numerous police officers and the public. Most importantly of all, there was and is no motive for Agent Walters to fabricate, either now or in the criminal complaint, where Mr. Coachy was arrested. It was, to put it bluntly, a careless mistake and, in other circumstances, it could have been an extremely dangerous mistake. It should not recur.

With this said, Agent Walters' testimony is in no way compromised or impeached to any extent by the erroneous recitation in the complaint regarding the place of Mr. Coachy's arrest. To repeat, he is credible, and the court unreservedly believes his testimony.

In conclusion, defendant was verbally advised of his constitutional right to remain silent at 1:00 p.m., or perhaps at 2:00 p.m., on July 9, 2009, immediately upon his arrest by Agent Walters and the other police officers. Mr. Coachy acknowledged that he understood those rights and he knowingly and voluntarily agreed to waive his right to remain silent. Only then did Agent Walters question him. Thereafter, defendant knowledgeably and voluntarily, free of duress or coercion of any kind, consented to the search of his motel room.

A search pursuant to a valid consent is an exception to the Fourth Amendment's requirement for a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Defendant's consent was valid. Further, defendant's statements were the product of a free and

unconstrained choice by Mr. Coachy after being advised he was not required to make any statement.  *Id.*; *Miranda v. Arizona*, 384 U.S. 436 (1966).   Therefore, it is respectfully recommended that defendant's motions to suppress, (Docs. 54 and 63) be denied.[2]

Respectfully submitted,


_____s/ Dennis H. Inman_____
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived.  28 U.S.C. § 636(b)(1).